William B. TANNER, Plaintiff–Appellant,

v.

CAPLIN & DRYSDALE; Peter Van N. Lockwood; Graeme W. Bush; and Cono R. Namorato, Defendants–Appellees.

No. 93–5441.

United States Court of Appeals,
Sixth Circuit.

Argued April 20, 1994.

Decided May 25, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied July 20, 1994.

Everett Gibson, Memphis, TN (argued and briefed), for plaintiff-appellant.

Thomas J. Walsh, Jr., James W. McDonnell, Jr. (argued and briefed), Sheryl H. Lipman, McDonnell & Boyd, Memphis, TN, for defendants-appellees.

Before: KENNEDY and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

In this legal malpractice suit, plaintiff William B. Tanner appeals the District Court's order granting summary judgment in favor of defendants, the law firm of Caplin & Drysdale and three of its attorneys.[1] On appeal, plaintiff argues that the District Court erred in ruling that plaintiff's expert opinion testimony was insufficient as a matter of law to prove that plaintiff suffered damages as a result of defendants' alleged malpractice. For the reasons stated below, we affirm.

**I.**

The alleged legal malpractice concerns advice rendered to plaintiff by defendants in connection with the settlement of a suit against plaintiff entitled *Thomas J. Lipton, Inc. v. Media General Broadcast Services, Inc. and William B. Tanner, et al.,* Civ. Action No. 84–2110–D (D.N.J.) ("the *Lipton* suit"), and the effect that such advice had on the settlement value of another action against plaintiff entitled *Media General, Inc. v. William B. Tanner, et al.,* Civ. Action No. 84–2212–TVA (W.D. Tenn.) ("the *Media General* suit"). Jurisdiction is based on diversity of citizenship.

In July 1982, plaintiff sold his spot media buying business, the William B. Tanner Company ("WBTCO"), to Media General, Inc. ("Media General"). Plaintiff remained at WBTCO as its president and chief executive officer. WBTCO subsequently changed its name to Media General Broadcast Services, Inc. ("MGBS"). In August 1983, agents of the Federal Bureau of Investigation ("FBI") began investigating MGBS and gathered evidence showing that, prior to the sale of WBTCO to Media General, plaintiff and others bribed employees of WBTCO customers

---

**1.** The defendants are the Washington, D.C. law firm of Caplin & Drysdale, Chartered, and three of its attorneys, Graeme W. Bush, Cono R. Namorato and Peter Van N. Lockwood.

in return for the customers' media business. A flood of civil and criminal litigation ensued.

Soon after the FBI investigation began, plaintiff hired James F. Neal of Neal & Harwell and defendant Namorato of Caplin & Drysdale to represent him in connection with the criminal investigation. In March 1984, plaintiff's employment was terminated and Media General filed suit in the United States District Court for the Western District of Tennessee against plaintiff and others alleging securities fraud, common law fraud, breach of contract and other claims and seeking compensatory damages of $50 million and punitive damages of $100 million in conjunction with the sale of WBTCO to Media General. In addition, MGBS filed suit in the Chancery Court of Shelby County against plaintiff, and various trusts created by plaintiff, alleging, *inter alia*, breach of employment contract and fraudulent conveyance ("the *MGBS* suit") for his acts subsequent to the sale of WBTCO. On May 29, 1984, Thomas J. Lipton, Inc. ("Lipton") filed the *Lipton* suit against plaintiff, MGBS and others, including two Lipton employees who were allegedly bribed by plaintiff. The *Lipton* complaint alleged fraud, commercial bribery, breach of fiduciary duty, and violations of federal and state RICO statutes. Plaintiff hired defendants to represent him in all three civil suits with defendant Lockwood as lead counsel, assisted by defendants Bush and Namorato.

On January 30, 1985, plaintiff pled guilty in the District Court for the Western District of Tennessee to one count of conspiracy to commit mail fraud and three counts of conspiracy to commit income tax fraud. On May 3, 1985, the court sentenced plaintiff to four years imprisonment of which he served eighteen months in prison and six months in a halfway house. In the summer of 1985, settlement negotiations commenced regarding the *Lipton* suit. Defendants allege that neither they nor plaintiff were involved in the initial discussions. Plaintiff, however, alleges that from the outset of the negotiations, Lockwood and Bush urged him to participate and that Namorato eventually did participate in the discussions. Plaintiff also asserts that he repeatedly expressed a desire not to settle with Lipton because the services rendered Lipton by WBTCO were all in accordance with the contract between the parties.

On October 11, 1985, Bush sent a draft of a settlement agreement with Lipton to plaintiff, with copies forwarded to Martin Grusin, another attorney representing plaintiff in corporate and tax matters, and Earl Funk, an advisor to plaintiff. During settlement discussions, plaintiff had expressed concerns that the *Lipton* settlement agreement might be viewed as an admission of plaintiff's liability and of the reasonableness of any settlement amount paid by MGBS. In response to these concerns, Lockwood sent a letter to one of Media General's lawyers, Andrew J. Brent, stating that plaintiff's willingness to settle the *Lipton* case was to save legal costs and in no way was a concession of liability. On November 1, 1985, Media General's attorney, Hullihen Moore, responded to the Lockwood letter with a letter in which he stated that Media General and MGBS considered the *Lipton* settlement reasonable and that plaintiff was in no position, given his liability in the *Lipton* suit, to challenge the reasonableness of the settlement amount. Moore's letter further stated:

> As we have indicated to you at every step of these proceedings, we shall vigorously pursue and plan to obtain recoupment of these and other losses and damages that Media General, Inc. and MGBS have suffered because of Mr. Tanner's actions.

On October 21, 1985, the *Lipton* suit was settled for $8 million. Plaintiff agreed to contribute $500,000 with the remainder to be paid by MGBS. The settlement agreement released plaintiff, MGBS and Media General from the *Lipton* suit. The settlement also contained a provision reserving all Media General's and MGBS' claims against plaintiff. Although mutual releases were executed by all other parties, Media General, MGBS and plaintiff executed no releases of claims against each other. Defendants concede that the *Lipton* settlement was recommended by them. They dispute, however, plaintiff's assertion that they assured him that the settlement would have no adverse effect on the *Media General* suit.

Following the *Lipton* settlement, defendants focussed their attention on the *Media General* suit and entered into settlement discussions by the Fall of 1987. Earlier, in July of 1987, plaintiff and Grusin met with Media General to discuss settling the *Media General* suit. At that meeting, Media General presented a written outline of its alleged damages including amounts paid to settle the *Lipton* suit as well as other claims against it relating to plaintiff's alleged fraud. In the Fall of 1988, Lockwood became ill and plaintiff hired three attorneys to serve as lead counsel in the Memphis *Media General* suit: W. Ernest Norcross, Joe D. Spicer, and Robert Flynn. In a letter to Norcross dated September 22, 1988, Bush outlined Media General's case against plaintiff and set forth defenses to be developed including the need for evidence to rebut liability for the *Lipton* settlement.

On March 14, 1989, shortly before the trial date in the *Media General* suit, defendants in the Memphis action filed a motion *in limine* to exclude all evidence relating to the *Lipton* settlement discussions. The District Court ruled that Federal Rules of Evidence 408 excludes evidence of the settlement discussions but that "Rule 408 does not apply to exclude the [*Lipton*] settlement agreement ... with respect to said evidence being offered solely for the purpose of establishing, to whatever extent relevant, damages allegedly suffered by [Media General] in connection with the purchase of [WBTCO] stock...." On July 1, 1989, plaintiff's local counsel filed a second motion *in limine* to prevent Media General from offering the *Lipton* settlement agreement as evidence in the *Media General* suit. Again the court denied the motion holding that the settlement agreement was admissible as an element of damages.

Prior to trial, plaintiff and Media General reached a settlement. Plaintiff would pay $15 million to settle both the *Media General* suit in federal court and the *MGBS* suit in state court ("the *Media General* settlement"). Of that money, plaintiff agreed to pay $12,321,000 to MGBS to settle the *MGBS* suit, and the Tanner children's trusts were to pay $2,679,000 to settle the Memphis *Media General* suit. Defendants did not participate in these settlement negotiations or with the courts' approvals of the settlement agreement.

On October 2, 1989, plaintiff filed the instant action against defendants alleging breach of contract, breach of fiduciary duty, breach of duty of loyalty and violation of Disciplinary Rule 7–101(A)(3) of the Code of Professional Responsibility. Plaintiff argued that defendants failed to follow accepted standards of practice for attorneys defending complex civil suits by failing to insure that plaintiff's participation in the *Lipton* settlement would not adversely affect plaintiff's defense in the *Media General* suit pending at the time in Memphis. Specifically, plaintiff argued that defendants should have attempted to negotiate a *Lipton* settlement agreement to provide that it did not constitute an admission by plaintiff of the acts alleged to be fraudulent by Lipton, or that the *Lipton* agreement could not be used as evidence in the *Media General* suit. Further, plaintiff asserted, defendants failed to warn him of the potential adverse impact that the *Lipton* settlement could have on the *Media General* suit. Plaintiff alleged that, as a direct and proximate result of defendants' negligent advice concerning the *Lipton* settlement agreement, his liability exposure in the *Media General* suit increased from $5 million to $15 million. Plaintiff alleged that he personally paid eighty-one percent of the *Media General* settlement and that, after tax deductions are subtracted, plaintiff suffered damages of $5 million to $6 million. In support of his claim, plaintiff proffered the testimony of the three Memphis lawyers who replaced defendants and represented him in the settlement of that action. Each lawyer was prepared to testify that defendants were negligent and that defendants' negligence forced them to increase the settlement offer to Media General by $10 million.

On December 16, 1991, defendants moved for summary judgment. The District Court held, on September 22, 1992, that plaintiff's expert opinion evidence created an issue of fact as to defendants' alleged professional negligence. The court held, however, that plaintiff's expert opinion evidence was too

speculative under Tennessee law to prove that professional negligence caused plaintiff to suffer damages. Therefore, the District Court granted defendants' motion for summary judgment and dismissed plaintiff's complaint. Plaintiff appeals.

## II.

Plaintiff appeals the District Court's grant of defendants' motion for summary judgment. We review a district court's grant of summary judgment *de novo*. *Jones v. Tennessee Valley Auth.*, 948 F.2d 258, 261 (6th Cir.1991). Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the district court that there is an absence of a genuine dispute over any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This burden may be discharged either by producing evidence showing the absence of a genuine issue of material fact or by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. at 2553–54. Once the moving party has made and supported its motion for summary judgment, the adverse party must, by affidavits or otherwise, set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Where, looking to the record as a whole, a reasonable mind could come to only one conclusion, there is no genuine issue of material fact and summary judgment is appropriate. *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511–12.

## III.

Plaintiff argues on appeal that the District Court erroneously held that plaintiff's evidence was insufficient as a matter of law to prove that plaintiff suffered damage as a result of defendants' alleged negligence. In a legal malpractice suit based on Tennessee law, "the plaintiff must establish the employment of the attorney, negligent breach of duty by the attorney, and damages resulting from such neglect." *Blocker v. Dearborn & Ewing*, 851 S.W.2d 825, 827 (Tenn.App.1992). The District Court held that plaintiff presented sufficient evidence on the question of defendants' negligence. The court granted defendants' motion for summary judgment, however, on the ground that plaintiff's expert opinion evidence was too speculative to create a genuine issue of fact on the question of damages.

Reviewing plaintiff's evidence as it relates to damages, we agree with the District Court that his proof is insufficient. Plaintiff presents no evidence that Media General would have agreed to a provision in the *Lipton* settlement agreement prohibiting the agreement's admission in Media General's action against plaintiff. Indeed, the *Lipton* agreement specifically states that Media General reserves all rights against plaintiff. Plaintiff's experts conceded that it was unlikely, and it defies common sense, that Media General, which paid $7.5 million to settle with Lipton, would agree not to use evidence of such payment in an indemnification action against plaintiff whether plaintiff contributed $500,000 to the settlement or not. Nor has plaintiff offered any evidence to the contrary. Plaintiff's experts state that if Media General would not agree to such terms, then defendants should have litigated the *Lipton* suit. But, as plaintiff conceded in oral argument, his experts acknowledge they are completely incapable of determining the likely outcome of a *Lipton* trial, a trial in which plaintiff's exposure exceeded $60 million. Thus, there is simply no evidence that plaintiff would have paid out less money overall between the three suits had defendants continued to litigate the *Lipton* suit on plaintiff's behalf. As the District Court stated, "plaintiff has offered nothing but speculation about what might have occurred had he not followed defendants' advice." Speculation about what might have occurred fails to create a jury question as to the alleged damage sustained by plaintiff. *See Spalding v. Davis*, 674

S.W.2d 710, 715 (Tenn.1984), *overruled in part on other grounds, Meadows v. State,* 849 S.W.2d 748, 752 (Tenn.1993).

## IV.

For the reasons stated above, the District Court's order granting summary judgment in favor of defendants is **AFFIRMED.**