DUCTMATE INDUSTRIES, INC., Plaintiff,

v.

FAMOUS SUPPLY CORP., et al., Defendants.

No. 5:98–CV–2341.

United States District Court, N.D. Ohio, Eastern Division.

July 6, 1999.

and Mez Industries, Inc. for direct and indirect infringement of four patents.[1] The patents in suit involve a mechanical system for connecting metal air duct sections together. Plaintiff Ductmate alleges the defendants infringed these patents by manufacturing, distributing and using duct connecting parts and methods that copy Ductmate's patented devices and methods.

On May 3, 1999, Defendants filed a motion seeking summary judgment of non-infringement and invalidity on all of Plaintiff Ductmate's claims for infringement [Doc. 44]. With this motion, the defendants say the accused devices and methods of connecting air duct sections using "duct connecting flanges," "corner pieces," and "gaskets," is a system well known and disclosed in prior art. Defendants argue Ductmate's patents are invalid as "anticipated" under 35 U.S.C. § 102, or invalid as "obvious" under 35 U.S.C. § 103(a).

In ruling on the defendants' motion, the Court first construes certain patent claims as a matter of law. See *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The parties have filed briefs proposing claims construction for the '376 patent (Claims 1–7), the '661 patent (Claims 1–9), the '688 patent (Claims 1 and 5), and the '756 patent (Claims 1–9). On May 3, 1999, the Court conducted a *Markman* hearing to hear evidence and argument on claims construction.

After construing the claims, the Court decides if the defendants show an absence of factual issues to warrant a judgment of non-infringement on Ductmate's claims. The Court also decides if the defendants give clear and convincing evidence to warrant a judgment of invalidity. Having reviewed the record, and for the reasons that follow, the Court denies the defendants' motion for summary judgment of non-infringement and invalidity.

George Raynovich, Jr., Buchanan & Ingersoll, Pittsburgh, PA, Paul David Eklund, Davis & Young, Cleveland, OH, Melvin L. Moser, Gorr, Moser, Dell & Loughney, Pittsburgh, PA, David G. Utley, Davis & Young, Akron, OH, for Ductmate Industries, Inc., plaintiff.

Jonathan M. Yarger, James B. Rosenthal, Kohrman, Jackson & Krantz, Cleveland, OH, David A. Dillard, Peter J. Reitan, Christie, Parker & Hale, Pasadena, CA, Robert J. Gilmer, Myron Charles Collins, Eastman & Smith, Toledo, OH, for Famous Supply Corporation, XL Enterprises, Inc., Duro Dyne Corporation, MEZ Industries, Inc., defendants.

## OPINION AND ORDER

GWIN, District Judge.

In this patent infringement case, Plaintiff Ductmate Industries, Inc. sues Defendants Famous Supply Corporation, XL Enterprises, Inc., Duro Dyne Corporation,

---

1. The patents are U.S. Patent Nos. 4,508,376 (the "'376 patent'"), 4,584,756 (the "'756 patent'"), 4,662,661 (the "'661 patent'"), and 5,022,688 (the "'688 patent'").

## I. Background

On October 14, 1998, Plaintiff Ductmate Industries, Inc. filed this suit against Defendants Duro Dyne Corp., Famous Supply Corp., Mez Industries, Inc., and XL Enterprises, Inc. [Doc. 1]. Defendant Mez Industries manufactures the accused duct connecting system and devices. The accused devices include metal corner pieces used to connect sections of air duct together. The corner pieces are designated Mez 220A, 230A, and 240A, and are used with Mez 120, 130, and 140 duct connecting flanges. Defendants Duro Dyne Corp. and Famous Supply distribute Mez products. Defendant XL Enterprise, Inc. has manufactured and installed ducts using Mez parts purchased from Defendant Famous Supply.

In its complaint, Plaintiff Ductmate accuses all of the defendants of infringing Ductmate's duct connecting system, parts and methods claimed in its '376, '756, '661 and '668 patents. Ductmate specifically accuses Defendant XL of directly infringing the method claimed in the '756 Patent. Ductmate also accuses Defendants Mez, Duro Dyne and Famous Supply of inducing infringement of all four patents. Ductmate says these defendants indirectly infringed the patents by making or selling the accused Mez products to others.

The patents in suit involve a mechanical system and method of connecting sheetmetal air duct sections using three essential parts: (1) L-shaped metal corner pieces with two equal-length legs extending at near 90 degrees from the corner section; (2) shaped sheet-metal duct connecting flanges with a "duct receiving" portion and an "upstanding corner piece receiving" portion designed to receive duct end edges and corner piece legs; and (3) gaskets to provide an air-tight seal between abutting duct sections (flange frames).

The process of assembling air duct sections generally occurs on location. An installer joins the sheet-metal duct sections together using the parts described above.

Mez Industries designs the corner piece legs to fit into the corner piece receiving portions of the flanges. By inserting four corner pieces into receiving flange ends the installer creates a "flange frame." A properly built flange frame will fit the rectangular ends of a duct section. An installer may connect continuous duct sections by joining air duct sections using sets of flange frames and placing bolts through pre-set holes in the corner pieces. A gasket is placed between two abutting flange frames to create an air-tight seal. Defendants say the duct connecting system, its parts and its methods, was well known and disclosed in prior art.

In arguing that Plaintiff Ductmate's patent was obvious or anticipated, Defendants rely on the earlier "Smitka Patent"—U.S. Patent No. 4,123,094 (the "Smitka '094"). Defendants say the Smitka patent discloses the parts and methods comprising the duct connecting system at issue.

First, Defendants allege that Smitka '094 discloses using a corner piece in a manner consistent with the Mez corner piece. Defendants say Smitka discloses using a corner piece with displaced planar legs (as apposed to flat or co-planar legs) to connect the flanges. The defendants also say that Smitka '094 discloses using a corner piece with an offset corner region. This permits the forward end of the duct corners to extend beyond the front surface of the recessed corner region in the assembled condition.

Defendants next allege that Smitka '094 discloses using a gasket in a manner consistent with the Mez gasket. Defendants say Smitka discloses using "packing" to create an air-tight seal between the flange frames. Defendants suggest using gaskets to seal duct joints was well known in prior art. The defendants reference earlier patents as examples, including the Mez DT 26 27 515 Patent (disclosing the use packing) and the Knox patent (disclosing the use of a sealing ring). Alternatively, the defendants allege that the function of a

gasket to keep duct connections air-tight is obvious to anyone skilled in the art.

Defendants seek judgment of non-infringement contending the accused Mez devices and methods are similar to the teachings of Smitka '094 and other prior art. Defendants also seek judgment finding Ductmate's patents invalid as anticipated or as obvious under 35 U.S.C. §§ 102 or 103(a), respectively. The Court decides these issues.

## II. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment will be rendered when requested if the evidence presented in the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In assessing the merits of a summary judgment motion, courts shall draw all justifiable inferences from the evidence presented in the record in the light most favorable to the non-moving party. *Woythal v. Tex–Tenn Corp.*, 112 F.3d 243, 245 (6th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 414, 139 L.Ed.2d 317 (1997).

The party moving for summary judgment has the burden of demonstrating the absence of genuine issues of material fact. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Miller v. Lorain County Bd. of Elections*, 141 F.3d 252, 256 (6th Cir.1998) (same).

Accordingly, viewing the evidence in the light most favorable to the nonmoving party, the court determines "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

This review does not change in patent infringement cases. *Avia Group Int'l v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed.Cir.1988). However, because infringement is itself a question of fact, "a district court must approach a motion for summary judgment of infringement or non-infringement with a care proportioned to the likelihood of it being inappropriate." *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1116 (Fed.Cir. 1985) (citations omitted).

Applying this standard, the Court first considers the defendants' motion of non-infringement. The Court then will address the defendants' motion on invalidity.

## III. Discussion

Plaintiff Ductmate sues the defendants for direct and indirect infringement. A defendant is liable for patent infringement if a plaintiff shows that the defendant violated 35 U.S.C. § 271(a). Section 271(a) states in part:

> "[W]hoever without authority makes, uses, sells, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent."

35 U.S.C. § 271(a).

■ Determining patent infringement is a two-step process. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315 (Fed.Cir.1998). First, the Court construes any disputed claim language to decide its meaning and scope. This first step is a legal question reserved for the Court. See *Markman*, 517 U.S. at 384, 116 S.Ct. 1384. Second, the claims are compared to the accused device or process. This second step is a question of fact reserved for trial. *Id.; see also Strattec Security Corp. v. General Automotive*

*Specialty Co., Inc.,* 126 F.3d 1411, 1416 (Fed.Cir.1997). The Court first construes the claims at issue.

## A. Claims Construction

Pursuant to *Markman,* a court must "first determine the meaning and scope of the patent claims at issue, a questions of law, before the factfinder may resolve whether the accused device infringes the patent claims as construed by the court, a question of fact." *Storer v. Hayes Microcomputer Prods., Inc.,* 960 F.Supp. 498, 500 (D.Mass.1997). When evaluating the claims here, the Court reviewed and considered the written submissions of the parties as directed to the specific claims at issue.

■ In construing a patent claim, the Court looks first to the three sources of intrinsic evidence of record: the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. *Genentech, Inc. v. Boehringer Mannheim GmbH,* 989 F.Supp. 359, 363 (D.Mass.1997) (citations omitted).

■ The Court examines the language of the claim. A construing court does not accord the specification, prosecution history, and other relevant evidence the same weight as the claim itself, but consults these sources to give the necessary context to the claim language. *See Cybor Corp. v. FAS Tech., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998). Terms used in the claim are to be given their ordinary and customary meaning "unless another meaning is specified or evident from the patent history." *Storer,* 960 F.Supp. at 501 (citation omitted).

■ The Court looks to extrinsic evidence to assist in construing a patent claim only if the intrinsic evidence is ambiguous.[2] During the *Markman* hearing on these claims, conducted May 3, 1999, the defendants offered no witnesses. Plaintiff Ductmate called Dr. Robert H. Sturges, Jr., an associate professor of mechanical engineering at Virginia Tech. Where the Court could construe Dr. Sturges' testimony as expert evidence, and thus extrinsic evidence, the Court has not relied on it in construing the claims. Instead, the Court has confined the construction of these claims to the actual language of the claims, the specifications, and the prosecution history.

Applying these legal standards, the Court first finds no basis for receiving any extrinsic expert witness evidence to assist the interpretation as to the meaning of terms and phrases at issue. Next, the Court construes the terms and phrases at issue as follows:

*Claims 1–7 of the 376 Patent and Claims 1–5 of the 661 Patent*

First, Claims 1 through 7 of the '376 patent and Claims 1–5 of the '661 Patent describe the corner piece apparatus. Claims 1, 4, 6 and 7 of the '376 patent contain the limitation that " ... said corner pieces each having a corner section and a pair of legs extending angularly from said corner section, said corner piece corner section and said legs having a *common front planar surface portion and a common rear planar surface portion ....*" (Emphasis added). Similarly, Claims 1 and 4 of the '661 contain the limitation that " ... said corner section and said legs having a *common front planar surface portion and a common rear planar surface portion ....*"

**2.** *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1583–85 (Fed.Cir.1996); *Markman,* 52 F.3d at 980–81. Thus, "[i]f a court is able to discern the meaning of a patent's claims after considering these three sources of intrinsic evidence [i.e. the patent claims, specification and prosecution history], it should not look further to expert testimony or other evidence not part of the public record to interpret the patent claims at issue." *Revlon Consumer Prod. Corp. v. L'Oreal, S.A.,* 170 F.R.D. 391, 393 (D.Del.1997). Opinion evidence on claim construction, "is no better than opinion testimony on the meaning of statutory terms." *Vitronics,* 90 F.3d at 1585.

■ The Court construes the language *"common front planar surface portion"* to mean that the corner piece corner section has a front surface in the same plane as the plane of the front surfaces of the legs which contact the inside front wall of the flange. The Court finds that surfaces displaced out of that common front planar surface, except surface displacements that result from normal manufacturing tolerances, are not surfaces in that plane.

Next, the Court construes the language *"common rear planar surface portion"* to mean that the corner piece corner section has a rear surface in the same plane as the plane of the rear surfaces of the legs. The Court finds that surfaces displaced out of that common rear planar surface, except surface displacements that result from normal manufacturing tolerances, are not surfaces in that plane.

This construction gives ordinary meaning to the terms used in the patent claims and is consistent with the prosecution history and patent specifications.[3] Also, this construction is consistent with Plaintiff Ductmate's August 16, 1983 amendments to the '376 patent claims. There, Ductmate amended certain claims and distinguished the '376 patent from the Smitka '094 patent. Ductmate argued that "[t]hat there is no disclosure in Smitka of a corner piece that has a corner section with a planar portion and a pair of legs extending angularly from the corner section in substantially the same plane as the planar portion of the corner section . . . ." *Id.* With this argument, Ductmate is stopped from arguing for a construction that includes corner piece corner sections that are not *in the same front or rear planar surface* as the corner piece legs, as the Court has construed those terms.[4]

*Claims 6–9 of the 661 Patent*

■ Claims 6, 7, 8, and 9 of the '661 patent further describe the corner piece apparatus. Claim 6 includes a limitation describing *"a flange portion . . . with an L-shaped edge portion being offset at an angle less than 90 degrees from the corner section front surface so that said L-shaped edge extends rearwardly in a direction from said corner section front surface to said corner section rear surface."* (Emphasis added). The Court construes this language to require the L-shaped portion to extend rearwardly at an angle less than 90 degrees. Further, the L-shaped portion is to extend from the front surface of the corner section to the rear surface of the corner section.

*Claims 1 and 5 of the 688 Patent*

Claims 1 and 5 of the '688 patent are directed at the gasket means used between air duct end sections and abutting flange frames and about the corner pieces to create an air-tight seal. These claims include language describing the duct and gasket connecting means as requiring the duct end portions "to extend beyond said front surface of said corner means into abutting relation with a unitary continuous external gasket means having a uniform thickness that extends around the periphery of said duct connecting flange members and by said uniform thickness seals said duct connecting flange members and also the corner edge portions of the duct. . . ."

■ First, the Court construes the phrase *"unitary continuous external gasket means"* to require the gasket means to be a unitary (one-piece), uninterrupted gasket means having a uniform thickness

---

3. *See* Webster's Third New International Dictionary (Unabridged 1993), defining relevant terms. "Plane" (noun) means "a surface such that the straight line that joins any two points lies wholly in that surface"; (adj.) "having no elevations or depressions." *Id.* at 1730.

4. *See* File History to the '376 patent, Amendment to Ductmate's '376 patent dated August 16, 1983 at 20.

that extends around the periphery of said duct connecting flange members.[5]

■ Second, the Court construes the phrases *"having a uniform thickness"* and *"by said uniform thickness seals ..."* to require the gasket means to be the same thickness throughout and to seal the duct connecting flange members and also the corner edge portions of the duct, forming the only seal for the corner edge portions of the duct extending beyond said front surface of said corner means.

This construction gives ordinary meaning to the terms used in the patent claims and is consistent with the prosecution history and patent specifications. Further, having considered Plaintiff Ductmate's February 20, 1990 amendments to these claims, it is stopped from arguing that the gasket means is something other than a *unitary continuous external gasket means having a uniform thickness,* as the Court has construed those terms.[6]

*Claims 1–9 of the 756 Patent*

■ First, Claims 1 through 9 of the '756 patent are directed to a method for connecting the end portions of duct sections together. Claims 1, 4, 6, 8 and 9 include language describing the assembly method as comprising certain steps. The Court construes the language *comprising the steps of,* ... to not require a person assembling the ducts to follow the identified steps in exact sequential order. The claim language contemplates the general process of connecting duct section end portions together and does not specifically instruct that a particular "step" must be performed before or after another step.[7]

■ Second, the claims also describe a method for *"projecting the corner edge portions of the duct section end portions beyond the corner section."* For example, Claim 1 requires *"projecting the corner edge of the duct section end portions beyond the corner pieces into the gasket member to deform a surface of said gasket member ...."* (Emphasis added). The Court construes this language to require an assembler to take some action to cause the offset portion of the corner section to be moved relative to the corner piece front surface.[8]

Having construed the claims, the Court next decides the defendants' motion for summary judgment of non-infringement and invalidity.

## B. Defendants' Motion of Non–Infringement

To succeed on a motion for summary judgment of non-infringement, the moving party bears the burden to show the ab-

---

5. *See* File History to the '688 patent, Amendment to Ductmate's '688 patent dated February 20, 1990 at 8–9. Plaintiff Ductmate states the amendments "now specifically define the only seal for the corner edge portions as being the unitary gasket that also seals the flange members." Ductmate further states that the amended claims provide a means "whereby a seal is created at the corner sections of the duct solely by means of the gasket and without the addition of any packing strip or additional packing material." *Id.*

6. *See* Webster's Dictionary, *supra,* defining relevant terms. "Continuous" means "characterized by uninterrupted extension in space; stretching on without break or interruption." *Id.* at 493–94. "Unitary" means "having the character of a unit; not divided or discontinuous." *Id.* at 2500. "Uniform" means marked by lack of variation, diversity, change in form, manner, worth, or degree. *Id.* at 2498.

7. *See* Webster's Dictionary, *supra,* defining "step" as "an action, proceeding, or measure often occurring as one in a series." *Id.* at 2236. *See generally Application of Gelnovatch,* 595 F.2d 32, 38–38 (C.C.P.A. 1979) (stating the determination of whether a claimed method is a 'process' within the meaning of 35 U.S.C. § 101 is unaffected by the particular apparatus for carrying out the method.) *Id.* at 37. To decide whether a method is statutory subject matter, "any analysis must start from the premise that 'a series of steps is a 'process' within § 101.'" *Id.* at 38.

8. *See* Webster's Dictionary, *supra,* defining "project" (verb) to w or cast forward; "to cause to protrude;" "to cause to fall into space or upon a surface." *Id.* at 1813.

sence of all genuine issues of material fact. *Jay v. Secretary of Dep't of Health & Human Servs.*, 998 F.2d 979, 982 (Fed.Cir. 1993). To satisfy this burden, the defendants here must persuade the Court that no credible evidence exists to support Plaintiff Ductmate's claims. *Tanner v. Caplin & Drysdale*, 24 F.3d 874, 878 (6th Cir.1994).

### 1. Direct Infringement

■■■■ As earlier stated, Plaintiff Ductmate sues the defendants for direct and indirect infringement. Direct or "literal" infringement occurs when the accused device or process (here, the Mez corner piece) contains all of the limitations specified in at least one claim of the patent. To prove literal infringement, the accusing party must show that the accused infringer has infringed each element of the asserted claim. If the Court finds no evidence to show literal infringement, the Court then reviews the evidence to see if the accused device has substantial equivalents to each element of the asserted claim.[9] The absence of even one claimed element will defeat a claim for direct infringement. See *S. Bravo Systems, Inc. v. Containment Technologies Corp.*, 96 F.3d 1372, 1376 (Fed.Cir.1996); *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir.1991) ("To establish infringement, every limitation set forth in a patent claim must be found in an accused product or process exactly or by a substantial equivalent.").

■■■■ Even if a plaintiff does not show literal infringement of all elements of a claim, he may show infringement under the "Doctrine of Equivalents." The Doctrine of Equivalents holds that a device or method is infringed "even if it does not 'literally' infringe the patent 'if it performs substantially the same function in substantially the same way to obtain the same result.'" *Mead Digital Systems, Inc. v. A.B. Dick Co.*, 723 F.2d 455, 462 (6th Cir.

1983) (quoting *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147 (1929)). For the doctrine to apply, the accused device must contain elements that are "equivalent" to those elements that were not literally infringed. *Id.*

■■■■ In this case, material issues of fact exist regarding the extent to which, if at all, these defendants literally or by the Doctrine of Equivalents infringed the patents in suit. First, the defendants do not show an absence of credible evidence in support of Plaintiff Ductmate's infringement claims. The record shows evidence that the defendants either manufactured or sold duct connecting devices and methods (the Mez products). The record also suggests that the Mez products are similar to the components and methods of Ductmate's products. However, neither party gives sufficient nor conclusive evidence that any defendant infringed or did not infringe *each and every element* of Ductmate's patented claims. See *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed.Cir.1996) (requiring every limitation recited in claim to be found in the accused device or product) (citations omitted).

Defendants urge the Court to grant summary judgment of non-infringement on grounds that no factual dispute exists concerning the "structure of the device[s]" at issue. In this regard, the defendants say that claims construction alone will resolve the issue of literal infringement. The Court disagrees. Although the Court's claim construction clarifies the meaning of the claims in suit, the issue of whether the Mez devices and methods infringe Ductmate's products and methods is a factual question.

This equally applies to infringement under the Doctrine of Equivalents. Equivalence, like infringement itself, is question

9. *See Lemelson v. United States,* 752 F.2d 1538, 1551 at n. 3 (Fed.Cir.1985) (stating: "If equivalence is in issue, we think the better practice is to consider equivalence apart from the issue of literal infringement and to make separate findings of fact on equivalence.").

of fact and therefore is appropriately decided by a jury. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 609–610, 70 S.Ct. 854, 94 L.Ed. 1097 (1950). Here, Plaintiff Ductmate gives sufficient evidence showing that material fact issues exist on whether the Mez devices and methods are substantially equivalent to the Ductmate system.

First, Ductmate shows a letter dated March 17, 1997, suggesting that in light of product similarity, the defendants may have designed the accused Mez devices and methods to avoid literal infringement of the plaintiff's product. Second, Ductmate shows deposition evidence that Defendants Famous Supply and Duro Dyne may have sold accused products to Defendant XL Enterprises, which later installed Mez products. This deposition evidence suggests that a jury could find that the Mez duct connecting parts and methods are substantially equivalent to those taught by Ductmate.

This evidence raises a genuine issue of material fact sufficient to defeat the defendants' motion for summary judgment of non-infringement. Accordingly, whether the Mez products are "substantially equivalent" to Ductmate's products and methods is a factual question not for the Court.

### 2. Indirect Infringement

■ The Court likewise finds that genuine issues of material fact exist regarding the extent to which, if at all, Defendants Famous Supply, Duro Dyne and Mez have indirectly infringed the patents in suit. Liability for indirect infringement arises only when there is a corresponding act of direct infringement by another. See *Joy Technologies, Inc. v. Flakt, Inc.,* 6

F.3d 770, 774 (Fed.Cir.1993). A plaintiff can prove indirect infringement by showing that a defendant either induced or contributed to infringement. Title 35, United States Code §§ 271(b) and (c) define indirect infringement. These sections state, in pertinent part:

(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

(c) Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. §§ 271(b) and (c).

■ For the defendants here to be liable for indirect infringement by inducement or contribution, Plaintiff Ductmate must show the defendants caused others purchasing the accused duct connecting system to use the devices or methods in an infringing way—that is, by practicing or engaging every step of the accused claims. Ductmate must also show that the defendants, as the alleged infringers or contributors, aided or encouraged infringement *knowing* the accused devices or methods to be especially made or especially adapted for use in an infringement of such patent. 35 U.S.C. § 172(c) (emphasis added).[10]

---

10. Potential liability for indirect infringement is triggered when the accused inducer "actively and knowingly aid[s] and abet[s] another's direct infringement." *Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed. Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). Furthermore, an accused inducer must actually intend to encourage infringement. *Manville Sales Corp. v. Paramount Sys., Inc.,* 917 F.2d 544, 553

(Fed.Cir.1990) (finding specific intent to induce infringement cannot exist where accused infringer had no prior awareness of the patent).

Contributory infringement requires a similar specific intent. An accused contributory infringer must know that the patent at issue is especially adapted for a use that is both patented and infringing. 35 U.S.C. § 271(c); *Aro Mfg. Co. v. Convertible Top Replacement*

In this case, summary judgment of non-infringement on Ductmate's claims for indirect infringement is not appropriate. As earlier stated, indirect infringement requires a corresponding act of direct infringement. Because the Court has found that material fact issues exist on Ductmate's claims for direct infringement, determining indirect infringement would be premature. Accordingly, we leave the question of indirect infringement to the jury.

Having denied the defendants' motion for summary judgment of non-infringement, the Court next considers the defendants' motion on patent invalidity.

### C. Defendants' Motion for Invalidity

Defendants also seek judgment that the patents in suit are invalid. Defendants contend that Ductmate's '376, '756, '688 and '661 patents are invalid as "anticipated" or "obvious." 35 U.S.C. §§ 102, 103(a).

■ The party asserting invalidity bears the burden to show invalidity by clear and convincing evidence. *Innovative Scuba Concepts, Inc. v. Feder Indus., Inc.,* 26 F.3d 1112, 1115 (Fed.Cir.1994); *Hewlett–Packard Co. v. Bausch & Lomb, Inc.,* 909 F.2d 1464, 1467 (Fed.Cir.1990). Generally, courts are to presume as valid patents approved and issued by the United States Patent and Trademark Office. 35 U.S.C. § 282. However, a party may show a patent to be invalid if he gives strong evidence that the subject matter was either anticipated or obvious.

■ A patent is invalid as "anticipated" under § 102 "only when a single prior art reference discloses each and every limitation of the claim." *Glaxo Inc. v. Novopharm, Ltd.,* 52 F.3d 1043, 1047 (Fed. Cir.1995), *cert. denied,* 516 U.S. 988, 116 S.Ct. 516, 133 L.Ed.2d 424 (1995) (citations omitted). A patent is invalid as "obvious" under § 103(a) if a party later shows that

the subject matter of the patented device or method, as a whole, was obvious at the time of the invention. Obviousness is determined by one ordinarily "skilled in the art" (subject matter) of the patent. 35 U.S.C. § 103(a).

While the ultimate question of patent validity is one of law, there are some underlying inquiries that raise questions of fact. See *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 989 (Fed.Cir. 1995) (comparing *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966)). Relevant to the instant case, these inquiries include questions of obviousness and anticipation. *Id.;* see also *Atlas Powder Co. v. E.I. duPont De Nemours & Co.,* 750 F.2d 1569, 1573 (Fed.Cir.1984) (stating clear and convincing standard will not change despite introduction of prior art not considered by PTO).

Here, the defendants suggest that the '376, '756, '688 and '661 patents are invalid as anticipated by the Smitka '094 patent, or as obvious in light of prior art. Defendants urge that besides Smitka, other prior art (including the Mez DT 26 27 515 (German), the Knox U.K. 1,407,796 ('796 patent), and SMACNA High/Low Pressure Duct Construction Standards) contemplates using gaskets to seal duct section connections (flange frames) and corners.

Respecting the '376 patent, the defendants urge that if the claims are not invalid as anticipated by Smitka, proper construction makes the claims invalid as obvious. Defendants specifically say that "it would have been obvious to anyone skilled in the art to use a gasket to seal the corner region...." and "[i]t would also have been obvious that the advantages of the Smitka offset corner could be enjoyed by combining it with the prior are corner pieces with co-planar corner

---

*Co.,* 377 U.S. 476, 488, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Thus, both forms of indirect infringement require that the accused

indirect infringer have actual knowledge of the patents in question.

sections and legs." Defendants' Brief at 17.

 Although defendants show evidence that the U.S. Patent and Trademark Office may not have considered all prior art when considering, re-examining, and subsequently issuing the patents in suit, the defendants cannot show invalidity simply on these statements alone. Rather, the defendants must give clear and convincing evidence to overcome the legal presumption of patent validity. Because the defendants at this stage fail to give clear and convincing evidence that the claims in suit were obvious in the prior art, or anticipated by Smitka, the Court denies the motion for summary judgment on invalidity.

### IV. Conclusion

For the reasons herein, the Court concludes that the defendants fail to show an absence of genuine issues material fact regarding Plaintiff Ductmate claims for direct and indirect infringement. Further, the Court concludes that the defendants fail to show clear and convincing evidence to warrant judgment on patent invalidity. Accordingly, the Court denies the defendants' motion for summary judgment [Doc. 44]. The Court will instruct the jury on the claims construction at trial.

IT IS SO ORDERED.

### ORDER

The Court has entered its opinion and order of decision in the above-captioned case. For the reasons therein, the Court denies the defendants' motion for summary judgment of non-infringement and invalidity [Doc. 44].

IT IS SO ORDERED.